WIDMAN INVESTMENT COMPANY, Appellant, v. CITY OF ST. JOSEPH.

**Division One, November 22, 1905.**

1. **GRADING STREET: Damage to Abutting Property: Special Benefits.** In a suit by the owner for damages to land abutting on a street, caused by changing the grade thereof, whether the change be from the natural to an artificial grade or from one artifical grade to another, the measure of his damages is the difference in value of the property before and after the change of grade, less any special benefit not common to all property in the neighborhood, caused by such change of grade or improvement; and this is the rule whether the cost of the improvement be paid by the city or taxed as benefit assessments against the abutting property; and, hence, in such case it is

proper to instruct the jury not to consider the fact that the cost of the improvement was taxed against the abutting property.

2. ———: Lowering Grade: Damage: Question For Jury. There is no standard measure of damages by which it can be determined that the lowering of the grade of a street in front of property from three to nine feet damages the property. The question must be left to the sound discretion of the jury.

3. ———: ———: Verdict: Passion and Prejudice. Plaintiff's land prior to the establishment of the grade was in its natural condition and on that side of the eighty-foot street was even with the grade. The center of the street was allowed to remain substantially on its natural grade, and the street on plaintiff's side was graded down from three to nine feet and the earth taken therefrom was placed on the opposite side, thereby making the street level. Twelve expert real estate men testified that plaintiff's property was damaged from $5 to $12.50 per foot in consequence of lowering the grade in front thereof, and two of plaintiff's officers testified that the property had been selling at $25 a foot before the change, and after the change no offers were made for it exceeding $17 or $18. Only one witness, a banker, who loaned money on real estate, testified that the property was worth as much after the change as before. *Held*, that a verdict for defendant cannot be said to be so clearly the result of passion or prejudice on the part of the jury as to authorize the appellate court to set it aside.

4. VERDICT: Twelve Witnesses Against One: Expert Opinion: Passion or Prejudice. The fact that twelve expert witnesses gave their opinion one way and one expert witness gave his opinion to the contrary, and the jury chose to believe and accept the testimony of the one, does not establish the fact that the verdict was the result of passion or prejudice. Mere numbers do not constitute the weight of the testimony, and at best the opinions of experts is advisory and not binding upon the jury. So long as there is substantial evidence to support the verdict, it is the province of the jury to believe it.

Appeal from Buchanan Circuit Court.—*Hon. A. M. Woodson*, Judge.

AFFIRMED.

*Culver & Phillip* for appellant.

(1) It is unquestionably true that a city is liable under the Constitution for damages to a property-owner

caused by grading a street. Smith v. St. Joseph, 122 Mo. 643. It is equally true that where the property-owner is not required to pay the cost of the grading, the measure of damages is the difference between the market value of the property immediately before and immediately after the grading, resulting from the change of grade; and that the jury, in order to determine the damages, must deduct the special benefits to the property resulting from the grading of the street. Hickman v. Kansas City, 120 Mo. 110. But it is also true that the special benefits resulting from the grading cannot be offset against the damages where the property-owner pays for the grading, unless the cost of the grading is deducted from the amount of special benefits. City of Bloomington v. Pollock, 31 N. E. 146. The case just cited is squarely in point and so clearly states the proposition that argument is unnecessary. It is clear, therefore, that the trial court erred in instructing the jury that it should offset against the damages the amount of the special benefits accruing to plaintiff's property as a result of the grading; but that the cost of the grading which plaintiff paid should not be considered. If the defendant wanted the jury to offset damages by the special benefits, then it should have asked the jury to give plaintiff credit for what those special benefits cost it. If the defendant was not willing the plaintiff should have credit for what the special benefits cost it, then it had no right to have the jury deduct these benefits from the damages sustained. In other words, it was error to tell the jury to consider the special benefits without telling them to consider their cost to plaintiff. (2) The court erred in refusing plaintiff's instruction B. It is not essential to plaintiff's right to recover that the grade of the street be changed its entire width. If the grade of the east half was changed and damage resulted plaintiff was entitled to compensation, though the grade of the west half was not materially changed. Stickford v. St.

Louis, 7 Mo. App. 217; Stickford v. St. Louis, 75 Mo. 309. (3) The verdict in this case is clearly the result of passion and prejudice on the part of the jury.

*William B. Norris* and *Edwin M. Spencer* for respondent.

(1) If appellant's criticism upon the two instructions be correct, and the law is as he contends for, still there was no error in the court's giving the instructions as they were given, for the reason that appellant failed to introduce any evidence tending to show the amount of the special taxbill issued against his property for the grading of King Hill avenue, or that appellant had paid, or would be required to pay the same. The court could not have told the jury that they must deduct, from the special benefits resulting from the grading of the street, the cost of the grading to appellant, when there was no evidence to show that the appellant did pay anything for grading of said street. So, it is therefore self-evident that appellant cannot complain of instructions 2 and 6, for his record is not in such a condition as to raise the question presented by him in his brief. However, the doctrine contended for by appellant is not the law of this State. Hickman v. Kansas City, 120 Mo. 123. The rule in this State for the taking of property has always been the difference in market value immediately before and immediately after the taking, and so the rule has always been held to apply to the damaging of property. (2) The jury heard the evidence and saw the witnesses and were familiar with the conditions that surrounded the trial of this case. They accepted by their verdict the defendant's contention and found a verdict for the defendant city. The trial judge adopted their view and refused to set aside the verdict on the ground that it was against the evidence and the weight of the evidence. From an examination of the evidence, it will

be seen that the question whether plaintiff's property was damaged or benefited by the grading of King Hill avenue, was a debatable one. Under the circumstances, it has been the universal practice of this court to refuse to interfere with the verdict of a jury.

MARSHALL, J.—This is an action for $6,000 damages for change of grade of King Hill avenue, a public highway in the defendant city. There was a verdict and judgment for the defendant, and after proper steps the plaintiff appealed.

The facts in judgment are these:

The plaintiff owns seventeen lots abutting King Hill avenue on the east, and having a frontage of four hundred feet by a depth of one hundred and ten feet. Under ordinance No. 3194, approved September 16th, 1901, the city caused King Hill avenue to be graded to a grade established by the ordinance. Prior to that time the street had never been graded or improved and the land covered by the street was in its natural condition. The lay of the land was naturally higher on the east than it was on the west side of the street, and plaintiff's land, prior to the establishment of the grade by the ordinance aforesaid, was substantially even with the grade on the east side of the street. Under the grade established by the ordinance the center of the street, which was eighty feet wide, was allowed to remain substantially on its natural grade. The east half of the street was graded down, and the earth taken therefrom was placed on the west half of the street, thereby making the street level. The effect of the grading on the east half of the street was to excavate the earth from zero at the center of the street eastwardly to the street line, at which there was a cut varying from three to eight and a half feet. This left the plaintiff's property that much above the grade of the street, and it is to recover damages therefor that this action is prosecuted.

At the outset it was admitted that the ordinance authorizing the grading of the street provided that the cost of the grading should be assessed against the abutting property and special taxbills should be issued therefor; but no such special taxbills were introduced in evidence, nor did it appear that the plaintiff had paid anything on account of the cost thereof, nor what the cost thereof to the plaintiff's property amounted to.

The plaintiff called twelve witnesses, who were engaged in the business of dealing in real estate in St. Joseph, who testified that the damages to the property would amount to from five to twelve dollars and fifty cents per front foot, though their testimony was modified to some extent on cross-examination. There was testimony adduced on behalf of the plaintiff that it would cost thirty cents per yard to do the grading, but there was no testimony adduced showing how many yards of grading was done. Two of the officers of the plaintiff company testified that before the grading was done the property was actually selling at $25 per foot, and that after the grading the most they were offered was $17 to $18 per foot. On behalf of the defendant one witness, a banker, testified that the plaintiff's property was vacant property, and that before the grading was done it was worth $10 a foot, and after the grading was done it was worth the same amount, that is, that was the loan value of the property, the amount for which a loan upon the same could have been obtained, the market value was about $13 a front foot before as well as after the grading was done.

At the request of the plaintiff the court instructed the jury as follows:

"1. The court instructs the jury that the natural surface of a street or highway of this city is the legal grade thereof until it is changed by ordinance. And the city had no right without the consent of the owner of the abutting property to change the grade of the

street from the natural surface thereof if such change damages or injures the abutting property as hereinafter defined without paying or tendering the owner of such abutting property, the damages occasioned by such change of grade.

"2. You are instructed that in considering whether or not any special benefits were conferred upon plaintiff's property you cannot take into consideration such benefits, if any, as were conferred upon property generally in the locality of the grading or elsewhere by reason of the fact, if it be a fact, that after said grading King Hill avenue was a better street for travel generally by the public.

"4. If you find for plaintiff, the measure of damages in this case is the difference, if any, in the market value of the property owned by plaintiff and mentioned in evidence immediately before said grading was done and immediately after it was finished, as caused by the grading done in front of and abutting said property."

Of its own motion the court instructed the jury as follows:

"2. It is admitted in this case that the plaintiff, Widman Investment Company, was the owner of the property mentioned in evidence at the time King Hill avenue was graded in 1901, and that said property fronts and abuts on said avenue; and it is further admitted that the defendant city caused said King Hill avenue where said property fronts and abuts the same, to be graded to its full width, and that no damages done on account of such grading was assessed, paid or tendered plaintiff.

"If, therefore, the jury find and believe from the evidence that at the time King Hill avenue was graded by the city of St. Joseph in front of and abutting the property of plaintiff, the surface of such street, or any portion thereof, as it existed just prior to said grad-

ing, was lowered, and that in consequence thereof said property of plaintiff was left above the surface of said street after it was graded, and that the access to said property from said avenue was thereby destroyed or rendered difficult, and that said property was thereby damaged and that the special benefits, if any, conferred upon said property by reason of the grading of said avenue, were less than the damages, if any done said property, then you will find for the plaintiff.''

At the request of the defendant the court gave eight instructions, but only the second and sixth are assigned as error, and they are as follows:

''2. If the jury believe from the evidence that the property of the plaintiff was in any manner specially benefited by the grading of King Hill avenue adjoining the same, and that the amount of said special benefits is equal to or greater than the damages, if any, done to said property by reason of said grading, then the plaintiff cannot recover and your verdict should be for the defendant.

''6. The jury are instructed that in weighing the evidence in this case and making up their verdict they should not give any consideration whatever to the fact that the cost of improving King Hill avenue was charged as a special tax against the adjoining property. The law assesses such cost against the adjoining property and the city is in no event liable to pay such tax and the owner of the land so assessed is not entitled under the law to recover the same from the city either directly or indirectly.''

The plaintiff seeks to reverse the judgment on two grounds, to-wit: first, that the trial court erred in giving defendant's instructions numbered 2 and 6, and in refusing plaintiff's instruction B; and second, that the verdict is against all the evidence and is clearly the result of passion and prejudice on the part of the jury.

## I.

The first error assigned by the plaintiff is the giving of instructions numbered 2 and 6 for defendant. Those instructions are as follows:

"2. If the jury believe from the evidence that the property of the plaintiff was in any manner specially benefited by the grading of King Hill avenue adjoining the same, and that the amount of said special benefits is equal to or greater than the damages, if any, done to said property by reason of said grading, then the plaintiff cannot recover and your verdict should be for the defendant.

"6. The jury are instructed that in weighing the evidence in this case and making up their verdict they should not give any consideration whatever to the fact that the cost of improving King Hill avenue was charged as a special tax against the adjoining property. The law assesses such cost against the adjoining property and the city is in no event liable to pay such tax and the owner of the land so assessed is not entitled under the law to recover the same from the city either directly or indirectly."

Since the clear and exhaustive opinion by BRACE, J., speaking for this court, in Banc, in Hickman v. Kansas City, 120 Mo. 110, it has heretofore been considered that all questions relating to the liability of a city for the change of grade of a street, whether from the natural to an artificial grade or from one artificial grade to another, had been set at rest; but plaintiff now claims that the decision in that case, and the decision of Division Number 2 of this court in Smith v. St. Joseph, 122 Mo. 643, did not consider or take into account the consideration of whether the abutting owner was chargeable with the cost of the grading of the street, and whilst conceding that where the cost of grading is paid by the city, the measure of damages announced in those cases is the correct rule, claims here

that where the cost of grading is assessed against the abutting property as a special tax, a different condition is presented, which was not considered or passed upon in those cases, and that instructions numbered 2 and 6, given for the defendant in this case, are based upon the rules announced in the Hickman and Smith cases, and are erroneous as applied to the case at bar. The plaintiff concedes that the ordinary rule is that the measure of damages where private property is damaged by public improvement, such as the establishment of a grade of a street by changing the natural grade to an artificial grade, is the difference in value of the property before and after the change of grade, less any special benefit not common to all the property in the neighborhood, caused by such change of grade or improvement. But the plaintiff contends that in ascertaining that amount, in cases where the cost of grading is assessable against the abutting property, such cost should be deducted from the special benefit aforesaid. In other words, appellant claims that it is the net benefit, as it terms it, which must be deducted from the damages, and argues that without this it would force the abutting owner to make a double payment. That is, the benefit accruing to the abutting owner specially would be deducted from the damages done by the improvement, and thereby the abutting owner would pay once for the benefits arising from the grading, and when he paid the special tax for the grading he would thereby pay a second time for the same benefit. In support of this contention plaintiff relies upon the cases of City of Bloomington v. Pollock, 31 N. E. 146, and Carroll v. City of Marshall, 99 Mo. App. 464. On the other hand, it is conceded that under the charter and ordinance of the defendant city, the cost of grading the street may be assessed as a special tax against the abutting property, and, as instruction No. 6 given for the defendant points out, the city cannot be made liable therefor either directly or indirectly, and that to

allow such costs to be deducted from the special benefits before the special benefits are deducted from the damages, would in effect make the city pay the cost of the grading instead of requiring the abutting owner to do so as the law provides.

Instruction number 2 given for the defendant follows accurately the measure of damages announced in instruction number 5 given in Smith v. St. Joseph, 122 Mo. l. c. 647, and is in strict harmony with the law as to the measure of damages in such cases promulgated by this court in Hickman v. Kansas City, 120 Mo. l. c. 121, where the whole subject was exhaustively discussed and the conclusion reached that, whilst a different rule obtains in other jurisdictions, the law had long been settled in this State that in such cases the measure of damages is the difference in value of the abutting property before and after the change of grade. It is not easy to express in language the exact line of demarcation between the rule laid down in those cases and the contention of the appellant in this case. The major premise of the syllogism is the right of the abutting owner to be compensated in damages for injuries to his property caused by a change of grade of a street. The minor premise is, that in ascertaining the amount of damages, the special benefits conferred on the abutting property by the change of grade must be deducted from the damages. The conclusion is the difference between the two. Now on behalf of the plaintiff the contention is that the sole basis for assessing the cost of improving a street against the abutting property, is that the abutting property has received a benefit commensurate with the special assessment, and if that amount is deducted from the damages, caused by a change of grade, in the first instance, and the abutting owner has to pay the special tax bill thereafter, or has already paid it, it will amount to a double payment for the same special benefit; but on the other hand it is claimed that if the cost of making the improvement must be paid by the

abutting owner and cannot be charged against the city, then by allowing that cost to be deducted from the special benefits accruing to the property from a change of grade, and those benefits are deducted from the damages caused by the change of grade and sought to be recovered in an action of this character, then the effect would be to make the city pay indirectly for the cost of improving the street, which under the law, is properly assessable to the abutting property. If the cost of grading is properly a part of the special benefits to be deducted from the damages, then it follows that in cases where the cost of grading is assessable against the abutting property that amount should be deducted from the special benefits before the special benefits are deducted from the damages. Otherwise, the abutting owner would pay twice for the same benefit. On the other hand, if the cost of grading is not properly included in the special benefits to be deducted from the damages, and such cost is deducted from the special benefits, the effect will be to make the city pay for the cost of grading, when under the law that cost cannot be charged to the city, but must be borne by the abutting owner. And likewise where the cost of the grading is payable by the city and not by the property owner, if the special benefits spoken of in the cases aforesaid include such cost, and those special benefits are deducted from the damages, the effect necessarily is to make the property-owner pay for the cost of grading where the city is liable therefor.

These considerations necessarily and logically lead to the conclusion that the cost of grading is not included in the special benefits accruing from a change of grade which must be deducted from the damages in actions under the Constitution of 1875, predicated upon section 21 of article 2 of the Constitution. The special benefits there spoken of do not mean the cost of grading, curbing, macadamizing or improving the surface of the roadway. For there is no difference in principle be-

tween grading and curbing, macadamizing and improving the surface of the roadway. To adopt the contention of the plaintiff would be equivalent to making the city pay for all such improvements of the streets by having them deducted from the special benefits before the special benefits are deducted from the damages; and thus relieve the property-owner from the burden of the cost of improving the streets, when by law he was chargeable therewith; or else would make the city liable therefor when by law it was not chargeable therewith. The conclusion is inevitable that such matters should not be taken into account at all in determining the damages to the property caused by the change of grade, and that they are not properly included in the meaning of special benefits as employed in such proceedings, but that the special benefits spoken of in such cases mean something other than the improvement of the street after the grade is established. This is the only practical and logical view to take of the matter, and this is the view the circuit court took of this case, and its ruling in that respect was correct.

Speaking for myself alone, I can conceive of no special benefit that can accrue to abutting property by the change of grade of the street, whether from its natural grade to an artificial grade or from one artificial grade to another, except in cases where the abutting property is higher than the grade and the change of grade consists in raising the grade of the street so as to bring it nearer to the level of the abutting propery, or where the abutting property is below the natural or artificial grade and the grade of the street is lowered so as to bring the property nearer to the grade of the street. Of course it could not be successfully claimed that the raising of the street above the grade of the abutting property would specially benefit the abutting property. On the contrary, it would necessarily damage it, for it would entail upon the owner of the abutting property the necessity of raising the grade of his prop-

erty so as to bring it to the level of the grade so changed
or established of the street.   Where the grade of the
street is above the grade of the abutting property, and
the grade of the street is lowered, of course the abutting
property is benefited *pro tanto,* for it will save the ex-
pense of filling up by as much as the grade of the street
is lowered.

In my judgment these are the full amounts of
special benefits which should be considered in determ-
ining the amount of damages caused by a change of
grade, and in such instances the benefits would neces-
sarily exceed the damages, and hence the abutting
owner would not be entitled to recover anything.   This
view to my mind relieves the situation of all embar-
rassment, and leaves the question of the amount of
damages done by the change of grade, totally distinct
and separate from the question of who should pay the
cost of improving the surface of the roadway, and
leaves the cost of such improvement to be borne by the
city or the abutting owner as the law may prescribe.

## II.

The second contention of the plaintiff is that the
court erred in refusing its instruction B.

The gist of this instruction is that although the
jury may believe from the evidence that the grade of
the street at its center was not materially changed, still
if they believe that the east half of the street immedi-
ately in front of the plaintiff's premises was changed
in grade, the plaintiff was entitled to recover.

There was no conflict in the evidence that the grad-
ing consisted in taking the earth from the east side of
the street and putting it on the west side, leaving the
center substantially as it was before.   Necessarily
whatever damage there was to the plaintiff's premises
consisted in lowering the grade in front of it.   Instruc-
tion 2, given by the court of its own motion, fully in-
structed the jury that if the surface of the street or any

portion thereof, as it existed just prior to the grading, was lowered, and that in consequence thereof plaintiff's property was left above the surface of the street as graded, and that access to the property was thereby destroyed or rendered difficult, and if the property was thereby benefited and the special benefits were less than the damages, the jury should find for the plaintiff.

That instruction fully covered every principle that was involved in plaintiff's instruction B that was refused by the court.

## III.

The last point relied on by the plaintiff is that the verdict is clearly the result of passion and prejudice on the part of the jury. This contention is based upon the following considerations, to-wit: first, that the lowering of a street grade from three to nine feet in front of abutting property necessarily causes damages to the abutting property; second, that twelve expert real estate men testified that the plaintiff's property was damaged from five to twelve dollars and fifty cents a foot in consequence of the change, and two of the officers of the company testified that the property had been selling at twenty-five dollars a foot before the change and after the change no offers were made for it exceeding seventeen or eighteen dollars a foot, and that only one witness, a banker, who loaned money on real estate, testified that the property was worth as much after the change of grade as it was before. Upon these predicates the plaintiff argues that a verdict in favor of the defendant necessarily shows on its face that it was the result of passion and prejudice on the part of the jury.

The deduction drawn is a *non sequitur*. The fact that twelve expert witnesses gave their opinion one way and only one expert witness gave his opinion to the contrary, and the jury accepted and chose to be-

lieve the testimony of the one as against the twelve, does not establish that the verdict was the result of passion and prejudice. It is the special province and privilege of the jury to weigh the evidence and to decide as they find the facts to be, and it matters not that one side produced many more witnesses than the other, for mere numbers do not constitute the weight of the testimony. At best the opinion of experts is merely advisory and not binding upon the jurors. Concededly there was substantial testimony to support the finding and in such cases the court does not interfere with the verdict even though it might have reached a different conclusion if it was the trier of the facts. [James v. Insurance Co., 148 Mo. 1.]

At first blush it might seem that lowering the grade of a street in front of property from three to nine feet would cause damage to the property, but whether or not property is damaged is a question of fact. The law affords no standard of measurement of damages in such cases whereby the damages can be ascertained according to a yardstick. Such matters are left to the sound judgment of the jury, and where there is substantial evidence to support the finding and the finding has been approved by the trial judge, this court never interferes. There is no further suggestion in this regard of passion or prejudice on the part of the jury, therefore this contention must be resolved against the appellant. Aside from these considerations it is largely a question of judgment and taste whether property is of more or less value when it is even with or above the grade of the adjoining street.

For these reasons the judgment of the circuit court is affirmed.

All concur, except so far as it is stated to be the individual opinion of the writer.