STATE of Missouri ex rel. STATE HIGH-
WAY COMMISSION of Missouri,
Plaintiff-Respondent,

v.

Kirby E. HART et al., on Exceptions of Kirby
E. Hart and Georgia B. Hart,
Defendants-Appellants.

No. 8626.

Springfield Court of Appeals.

Missouri.

July 6, 1967.

William E. Gladden, Houston, for defendants-appellants.

Robert L. Hyder, Thomas E. Cheatham, Jefferson City, for plaintiff-respondent.

TITUS, Judge.

Kirby Hart and his wife appeal from a judgment entered on a verdict returned in favor of plaintiff-respondent, the State Highway Commission of Missouri. The condemnation suit concerned partial relocation and improvement of Supplementary State Highway Z in Texas County where it traversed the twenty or twenty-five acres belonging to the Harts. 1.45 acres of appellants' land were taken for highway purposes and a river channel control easement was acquired in 1.82 acres. Damages of $2,500 to $5,000 were shown by appellants' witnesses, whereas "experts" testifying for respondent said the "before and after" values of the property were the same or the value of the remainder had been enhanced as much as $2,400 by the "improvements." Viewed with appellants' contentions as to their alleged damages, the amount in dispute on appeal gives us jurisdiction. V.A.M.S. Const. art. 5, §§ 3 and 13; V.A.M.S. § 477.040.

Before the instant acquisition, Highway Z crossed appellants' property so as to leave about a 4-acre tract east of the road and the remainder west of the highway. The estate was subject to a channel control easement. No access roads to either tract had ever been constructed, although appellants claimed it would have presented no problem to do so. The entire acreage consisted of unimproved, undeveloped ridge land lying south and west of Piney River that was unsuited for cultivation and had never been fenced. The timber had no commercial value and the land consisted of steep bluffs where it abutted the river. "West of the road, over where the Narrows is," a natural phenomenon known as "the balance rock" is situate. Access to this site by vehicle was gained by first traversing neighboring property not owned by appellants. Many visitors, curiosity seekers and fishermen were attracted to "the Narrows" and "the balance rock." Ingress was obtained without charge and by virtue of appellants' sufferance. One witness, in describing the property, opined "its pretty to look at and that's about the main value to it." The Harts have owned the land "close to twenty-four years" and according to Mr. Hart, "I just owned it for development and [to] let the public use it."

"Old" Highway Z ran fairly straight but the new road curves to the east for north-

bound traffic. Some of the old road and right of way (exact amount not shown) was abandoned when the new construction was completed and respondent built a driveway that "hooks back" onto appellants' west tract affording vehicular access to that parcel "up to the timber line." The grade of the new road is considerably lower than that of the old and appellants contend this renders access to their property more difficult than before. The Harts also claim the driveway constructed by respondent is so steep as to be of little or no benefit.

The first trial error claimed by appellants relates to the admission of the testimony of Vern Altis "because there was not a showing that this witness was qualified as an expert and there was not a proper foundation made by plaintiff as to the qualifications of this witness." The one and only objection made to the testimony appears in the transcript as follows:

"Q. [By respondent's counsel] Now, I'll ask you, Mr. Altis, for your opinion of the value of the property owned by Mr. Hart called the Narrows. A. You mean the dollars?

"Q. Yes, sir. A. Before the road?

"Q. Yes, sir. A. Well, I would say—

[By appellants' counsel] "Your Honor, I—Your Honor, I object to that. He's not shown proper qualifications.

"The Court: Well, immediately before the taking on January 4, 1965.

"Q. [By respondent's counsel] '65. Yes, sir. Immediately before the taking of January 4, '65.

"A. January 4, '65?

"Q. Yes, sir. A. Well, I would say a thousand dollars."

Subsequently, Mr. Altis gave his unobjected-to opinion, "the value of the property * * * immediately after [the taking] * * * would be worth just as much, if not more." At no time did appellants request or demand the trial court to rule on their lone objection; neither did they move to strike his testimony nor ask for an instruction that it be disregarded by the jury.

■ "If when inadmissible evidence is offered the party against whom such evidence is offered * * * fails * * * to insist upon a ruling on an objection to the introduction of such evidence * * * he is considered to have waived whatever objection he may have had thereto, and the evidence is in the record for consideration the same as other evidence." 53 Am.Jur. Trial, § 143, pp. 127–128.[1] This authority requires a holding that appellants waived any objections to the testimony of Mr. Altis by failing to obtain a ruling on the single objection made. Nevertheless, we will briefly consider the matter along the same approach made by the parties.

Mr. Altis, whose age was not asked, is a farmer and a life-long resident of Texas County. He has occupied his present farm, located "just off Route Z," for thirty years. The witness has known appellants' property since he "was just a young man" and has "been off and on there, been there lots of times." He is "interested in" and keeps "abreast of property values generally in Texas County," and knew what some of "the farms and other properties" in Texas County would "sell for." Mr. Altis "discussed with other people in Texas County and the Houston community values and the price property is bringing when its sold"

1. Also: State ex rel. State Highway Commission v. Schade, Mo.App., 271 S.W. 2d 196, 198(6) (transferred 265 S.W.2d 383); Bloecher v. Duerbeck, 338 Mo. 535, 92 S.W.2d 681, 690(13); Prichard v. Kitchen (Ky.), 242 S.W.2d 988, 992–993(13); Wilson v. Dalton's Adm'r., 311 Ky. 285, 223 S.W.2d 978, 981(4); Webb v. Mitchell, Tex.Civ.App., 371 S.W.2d 754, 760(4); Shover v. Iowa Lutheran Hospital, 252 Iowa 706, 107 N.W.2d 85, 93(14); United States v. McCoy, 193 U.S. 593, 598–599, 24 S.Ct. 528, 48 L. Ed. 805; 88 C.J.S. Trial § 145, p. 288, n. 42; 4 C.J.S. Appeal and Error § 321c, pp. 1024–1026.

and knew of several sales "of tracts of land along the rivers that are not sold for farm land but that are sold for other purposes." The witness had not gone onto appellants' land before the new highway was built with "the idea in mind of appraising" what damage might result from the construction, but did go there "and looked at the situation after I found out I was subpoenaed" and after the new roadway and bridge were completed.

■ The myriad factors considered in qualifying a witness an "expert" on land values were meticulously narrated and documented by the late Ruark, J., of this court in State ex rel. State Highway Commission v. Bloomfield Tractor Sales, Inc., Mo.App., 381 S.W.2d 20, 23–25(1–6). These were expressly approved and endorsed by our Supreme Court in State ex rel. State Highway Commission v. Barron, Mo., 400 S.W. 2d 33, 36–37 (3–13). Without reiterating what was there so ably penned, we simply note the peculiar acquaintanceship Mr. Altis possessed of the concerned property, coupled with his information and knowledge of land values in the area both as to "farms and other properties * * * along the rivers that are not sold for farm lands," would endow him with erudition of the subject superior to that of the ordinary juror and thus render his opinion permissible evidence. Any shortcomings beyond this would not detract from his qualifications but only from the weight to be afforded his testimony. His opinion was not isolated but merely cumulative of like expressions related by three other "experts." The qualifications necessary of a witness to testify as an "expert" is primarily for determination by the trial judge and his discretion in the matter will not be disturbed on appeal "unless abused or exercised in clear error of law." State v. Bloomfield Tractor Sales, Inc., supra, 381 S.W.2d at 25(6), and cases there cited. Had appellants insisted upon a ruling on their objection and had the trial court overruled it, which was not done, we would be of the opinion no error or abuse of discretion had been committed. Union Electric Company of Missouri v. Simpson, Mo.App., 371 S.W.2d 673, 677(1); Union Electric Company v. Mount, Mo.App., 386 S.W.2d 126, 132(6); State ex rel. Kansas City Power & Light Co. v. Gauld, 360 Mo. 795, 230 S.W.2d 850, 852(1, 2).

■ Item Two under "Points Relied On" in appellants' brief declares "the Court erred in permitting Plaintiff's attorney in his closing argument, over the objection of the Defendants, to make statements that were immaterial to the case and which tended to prejudice the jury against the defendants. Overruling the objection of defendants to this argument was prejudicial to the defendants." This abstract recitation clearly violates the requirements of Civil Rules 83.05(a) (3) and 83.05(c), V.A.M.R., and we would be justified in disregarding this point as preserving nothing for consideration on appeal. Appellants do not advise what statements, claimed prejudicial, were made by respondent's lawyer or why the trial court's ruling was erroneous. Cf., Hays v. Proctor, Mo.App., 404 S.W.2d 756, 761(6). In lenity, however, we turn to appellants' argument and motion for new trial to ascertain what specifics they may have had in mind.

The motion for new trial alludes to "the statements of plaintiffs' attorney referring to the benefit of the road for the general public, the damages due or given to other persons, the giving of right-a-way (sic) and the moving of fences by other persons." Appellants' argument indicates concern for the following portion of respondent's closing argument:

"* * * I think all of you agree with me that this property is worth as much, if not more, but all of you also say, 'Well, they took a little.' Should we pay Kirby Hart because they took a little even though he's not damaged? * * * the instructions say you can't give him a verdict unless you believe the defendants have been damaged * * * it's not fair to give Kirby Hart a dime

unless it's caused by the damage. It's not fair to pay Kirby Hart because he came here, if his property is worth as much. It's not that you're being unfair to me, because that doesn't make any difference. You're being unfair to everybody else in this County and State. Those people that have been damaged and have been paid for what they're damaged and that's all. It's not fair to people that move the fences on roads like this—

[Appellant's counsel] "Your Honor, I object to that. That's not competent argument, as to whether this man should be allowed damages as to what somebody else has given or done or moved fences or anything else.

[Respondent's counsel] "I haven't said anything about giving.

"The Court: Overruled.

[Respondent's counsel]: "I've only stated—all I mean by that is that other people received not one penny over what they are damaged, not one penny over the actual difference in the market value, and I say it's not fair to pay Kirby Hart when he's not damaged. It's not fair to anybody."

■ If there was prejudicial error in this argument, then we share fault with the learned and experienced trial judge who apparently detected none either when the argument was made or when the court reflected upon the matter prior to overruling the motion for new trial. The argument nowhere, as appellants contend, enjoined the jury to charge the Hart property with the value of general benefits, i.e., benefits common to all other landowners in the vicinity of the highway. See Thomson v. Kansas City, Mo.App., 379 S.W.2d 194, 198–199 (affirmed 384 S.W.2d 518); State ex rel. State Highway Commission v. McCann, Mo.App., 248 S.W.2d 17, 22–23 (3–5). We observe nothing referable to any "right-a-way" being given by any landowner, and if claim was intended to be made some owners

had moved fences without demanding compensation, this was not stated due to the interruption occasioned by the objection. "But the ultimate issue here lies deeper than a mere determination of error. Civil Rule 83.13(b), V.A.M.R., forbids a reversal except for error 'materially affecting the merits of the action.' In deciding the *effect* of improper argument we must consider the trial court's superior vantage point in determining materiality. We are 'inclined to defer to the trial court's opinion in these matters, unless upon a full examination of the record it appears that the improper argument was so prejudicial, inflammatory and outside the record as to affect the result on the merits.'" Lindsey v. P. J. Hamill Transfer Company, Mo.App., 404 S.W.2d 397, 400. Where the trial court does not consider instances of alleged improper conduct sufficient to require a new trial, an appellate court will defer to the trial court's opinion unless the error materially affects the merits. Collins v. Cowger, Mo., 283 S.W.2d 554, 561(9). Even assuming there was error, we decipher nothing in the argument that would have affected the result of the cause on the merits.

The last "Point Relied On" by appellants is "the verdict is so grossly inadequate as to show bias and prejudice of the jury against the Defendants." Neither of the two cases cited under this point (State ex rel. Kansas City Power & Light Co. v. Gauld, supra, 360 Mo. 795, 230 S.W.2d 850, and Missouri Power & Light Co. v. John Hancock Mut. Life Ins. Co., Mo.App., 58 S.W.2d 321) was concerned with inadequate damages. Appellants' argument is not confined to its brief assertion, but expands into a sweeping assignment "the combination of the closing argument of plaintiff's attorney * * * the admission of opinion evidence without any proper foundation * * * and the weight of the evidence herein is such as to infer prejudice and show bias on the part of the jury against defendants." We have heretofore ruled two of these points against appellants.

The issue tried to the jury was simply that of damages (Civil Rule 86.08 V.A.M.R.; V.A.M.S. § 523.050, subd. 2; City of Jefferson v. Capital City Oil Co., Mo.App., 286 S.W.2d 65, 69[5]) and the burden of proof was on appellants to establish their damages. City of St. Louis v. Kisling, Mo., 318 S.W.2d 221, 224(5), and cases cited. The measure of appellants' damages was the difference between the fair market value of the whole property immediately before the taking and the value of the remaining property after the taking (State ex rel. State Highway Commission v. McMurtry, Mo.App., 292 S.W.2d 947, 953(10), Mo., 300 S.W.2d 521; 29A C.J.S. Eminent Domain § 139, pp. 573–589) and the jury was so instructed in the form required by MAI No. 9.02. How the condemnation affected the property and damaged it was for the jury to say. 22 Am. Jur.2d, Damages § 338, p. 440.

The jury had before it as an exhibit a plat of the property in question showing the boundaries of the old and the new rights-of-way and easements. It could surmise, as we have done, there was little difference in the quantum of the newly acquired acreage as compared to that abandoned by respondent to appellants. "Experts" for appellants testified to damages in amounts varying from $2,500 to $5,000, whereas "experts" for respondent were just as certain there had been no damage or the undertaking was an improvement which had bettered the value of appellants' remaining property. "In the pending case, after determining the relative weight of the conflicting evidence in ruling on the motion for new trial, the trial court refused to grant a new trial. Our task in this circumstance is to determine whether the trial court abused its discretion, and in doing so * * * we determine whether there is substantial evidence to sustain the trial court's view * * * A judgment in a condemnation proceeding should not be disturbed 'because of a disparity in the testimony of witnesses or even because of a seeming preponderance of the evidence one way or another,' City of St. Louis v. Gerhart Realty Co., 328 Mo. 103, 40 S.W.2d 661, 665(12); and it has been held specifically that the opinion of one qualified witness as to the extent of damage 'would constitute substantial evidence' * * * It is true that in this case there was a substantial disparity between the evidence offered by appellants and by respondent on the issue of damages resulting from the taking of a portion of appellants' property. It may be that if the trial court after determining the relative weight of the conflicting evidence, had concluded that the verdict was against the weight of the evidence and had granted a new trial, we as an appellate court would affirm the exercise of that discretion [2] * * * But, while 'The trial court may pass upon the weight of the evidence; we cannot' * * * Therefore, 'We determine only whether the trial court abused its discretion in overruling [appellants'] motion for new trial on the ground of inadequacy of verdict.' Roush v. Alkire Truck Lines, Inc., Mo., 245 S.W.2d 8, 10 * * * There is no question but that * * * three [of the] expert witnesses who testified for respondent were qualified, and that their testimony was properly admitted. We necessarily must hold that their testimony constituted substantial evidence supporting the verdict * * * It was the prerogative of the jury from all the evidence in the case to determine * * * [the damages, if any], and when the trial court had denied a motion for new trial after the exercise of its authority to determine the relative weight of the conflicting evidence, and the jury's determination is supported by substantial evidence, as it was in this case, appellate courts may not interfere with that determination." State ex rel. State Highway

---

2. "Granting a new trial because the verdict is inadequate is equivalent to saying the verdict is contrary to the weight of the evidence." State ex rel. State Highway Commission v. Flynn, Mo.App., 263 S.W.2d 854, 856(1), and cases cited.

Commission v. Eilers, Mo., 406 S.W.2d 567, 574–575 (15–19). See also State ex rel. State Highway Commission v. Galeener, Mo., 402 S.W.2d 336, 344. Aside from the unsupported conclusion made, appellants have not demonstrated bias or prejudice on the part of the jury.

The judgment is affirmed.

STONE, P. J., and HOGAN, J., concur.